IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MARY AGNES SEALS,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Civil No. 17-10666 (RBK)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon the appeal of Plaintiff Mary Agnes Seals ("Plaintiff") for review of the final decision of the Commissioner of Social Security. (Doc. No. 5-2.) The Commissioner denied Plaintiff's application for Social Security Disability Insurance ("SSDI") benefits, finding Plaintiff was not disabled as defined by the Social Security Act. As explained below, the decision of the Commissioner is **AFFIRMED**.

# I. FACTUAL BACKGROUND

## A. Procedural History

On July 8, 2013, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning April 12, 2013. (R. at 17.) The claim was denied initially on October 15, 2013, and upon reconsideration on February 28, 2014. (*Id.*) On April 8, 2014 Plaintiff filed a request for a hearing. (*Id.*) A video hearing was held on June 1, 2016. (*Id.*) In a decision dated June 28, 2016, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. (R. at 17–24.) On August 29, 2017, the Appeals Council denied her request for review. (R. at 1–6.) Plaintiff then filed this action seeking review.

**B. Plaintiff's History**

Plaintiff Mary Agnes Seals is a 63-year-old woman who lives with her husband. (R. at 40.) She earned her GED and worked as a call center pension counselor from July 1991 to April 12, 2013. (R. at 39, 41.) She alleges that she became disabled on April 12, 2013 after being diagnosed with breast cancer in March 2013. (R. at 36.)

Plaintiff filed her initial claim for disability on July 8, 2013 due to stage-two invasive lobular breast cancer, pulmonary blood clots, high cholesterol, acid reflux, and neuropathy. (R. at 66.) In April 2013, Plaintiff was diagnosed with breast cancer, with confirmation by a pathology report on May 17, 2013. (R. at 489.) Plaintiff underwent right total and left modified radical mastectomies on April 2, 2013. (R. at 421–22.) The following week, Plaintiff experienced a pulmonary embolism. (R. at 557.) In June 2013, Plaintiff began chemotherapy treatment and experienced other physical side effects. (R. at 605–13.)

At her administrative hearing, Plaintiff testified to suffering from mixed-connective tissue disease and lymphedema, which cause her pain and limit her day-to-day activities. (R. at 42–43.) She stated that she did not receive medical treatment for either condition. (R. at 44.) She wears a compression garment to manage her lymphedema. (R. at 43.) Plaintiff also testified to treating her chronic pain with over-the-counter medication and elevating and icing her joints. (R. at 46.) Plaintiff does not receive treatment for her wrist pain. (R. at 47.) Nor has she received an MRI or EMG for her alleged wrist pain or neuropathy in her hands. (R. at 62–63.) Plaintiff takes Zoloft for her anxiety but does not receive specific treatment. (R. at 50–51.)

Plaintiff also testified that her husband does the majority of the housework, including laying out her clothes. (R. at 269.) She is unable to walk, stand, or sit for more than fifteen minutes at a time. (R. at 47–49.) In total, Plaintiff can stand for about one and a half to one and

three quarters hours per day with breaks. (R. at 48.) She is able to dust, wipe counters, assist with meal preparation, grocery shop, and spend time with her grandchildren a few times a week. (R. at 50, 53, 54.)

### C. Plaintiff's Relevant Medical History

We now review Plaintiff's medical history before Robert Silverbrook, D.O., Pauline Lerma, M.D., and Mariam Rubbani, M.D.

#### 1. Dr. Silverbrook

Dr. Silverbrook diagnosed Plaintiff with arthritis after complaints of pain as early as January 2, 2013 (R. at 455), but a treatment note of Dr. Silverbrook's from December 20, 2013 states Plaintiff's "arthritis onset date" as July 18, 2012. (R. at 604.) On December 20, 2013, Plaintiff complained to Dr. Silverbrook of arthritis and joint pain. Dr. Silverbrook noted on physical examinations in January 2013 and again in December 2013 that Plaintiff was "well nourished, well developed, [and] in no acute distress." (R. at 456, 602.)

In July 2014, Plaintiff reported further gastroesophageal reflux, a thyroid nodule, and lymphedema. (R. at 699.) Dr. Silverbrook found that her physical examination was normal and prescribed no plan of care for Plaintiff's lymphedema. (R. at 697–700.)

In April 2015, Plaintiff complained of ankle, arm, hip, knee, leg, and wrist pain. Dr. Silverbrook noted Plaintiff's mixed connective tissue disease, but prescribed no therapies, medications, or plan of care. (R. at 750.)

On May 17, 2016, Plaintiff reported knee and joint pain since starting her hormone blocker medication and described her pain as increasing but moderate. (R. at 809.) Dr. Silverbrook found that Plaintiff's physical examination was normal with the exception of bilateral hammer toes. (R. at 811.) Dr. Silverbrook also noted in May 2016 that Plaintiff

complained of joint pain and stiffness, specifically when walking and sitting. (R. at 809–10.) Plaintiff told Dr. Silverbrook she cannot sit longer than twenty minutes, walk more than one hundred yards, or lift her arms over her head. (R. at 812.)

Dr. Silverbrook completed a Medical Source Statement on May 27, 2016. (R. at 826–29.) He stated that Plaintiff's limitations existed from or before 2006. (R. at 826.) He indicated that Plaintiff has substantial limitations, including: her ability to only lift and carry one pound once per day; her ability to sit, stand, or walk for only fifteen minutes; and her inability to stoop, crouch, kneel, or crawl; and her inability to reach, bend, push, or pull. (R. at 826–27.) Dr. Silverbrook based these opinions on clinical findings such as MRIs and her diagnosis of lymphedema and mixed connective tissue disease. (R. at 826–34.)

### 2. Dr. Lerma

Plaintiff's treatment with oncologist Dr. Pauline Lerma began in 2013. (R. at 672.) Plaintiff received a double mastectomy for her breast cancer on April 18, 2013 and subsequently underwent radiation therapy. (R. at 654.) In June 2013, Dr. Lerma noted that Plaintiff was recovering well from her mastectomy and her physical examination was normal. (*Id.*)

On August 6, 2013, Dr. Lerma recorded adverse effect from Plaintiff's third (of four) cycles of chemotherapy, including: right hand and foot paresthesia and scattered arthralgias. (R. at 662.) Dr. Lerma stated, however, that these symptoms were not severe enough to warrant a reduction in chemotherapy and Plaintiff's physical examination was normal. (*Id.*)

In an August 12, 2013 visit, Plaintiff told Dr. Lerma of arthritic pains and blurred vision but "no other complaints" because of her chemotherapy treatment. Plaintiff followed up with Dr. Lerma on December 9, 2013 and reported paresthesia of the right foot and hand due to chemotherapy but no longer experienced blurred vision. (R. at 658.) Dr. Lerma examined

Plaintiff and found her to be "well-developed, alert, and coherent" and advised her to begin regular exercise. (*Id.*)

In January 2014, Plaintiff reported some tightness and discomfort in the left chest wall, rare palpitations, stable arthritic pains, and blurred vision. (R. at 656.) Dr. Lerma noted "good range of motion" besides the diminished range in Plaintiff's left shoulder. (*Id.*) In April 2014, Dr. Lerma directed Plaintiff to undergo physical therapy for her shoulder stiffness and clavicular pain. (R. at 633.) Plaintiff noted feeling relief after physical therapy and continued into June 2014. (R. at 842, 845–59, 869–77.) It was also noted that Plaintiff had "shown good progress in physical therapy." (R. at 862.)

Dr. Lerma wrote in an April 29, 2016 letter that Plaintiff suffers from lymphedema, causing discomfort and difficulty in arm movement and paresthesia of the right hand and foot. (R. at 743.) In an additional letter dated May 25, 2016, Dr. Lerma wrote that Plaintiff is permanently disabled and no longer able to perform past duties due to her lymphedema and breast cancer. (R. at 744.) She also noted that sedentary employment poses a concern for putting Plaintiff at risk for developing blood clots. (*Id.*).

### 3. Dr. Rubbani

In August 2013, Plaintiff requested long term disability due to her "risk for recurrent venous thromboembolism" when remaining seated for long periods of time at work. (R. at 661.) As a result, Plaintiff underwent a consultative exam with Dr. Mariam Rubbani in September 2013. (R. at 577–81.) Dr. Rubbani noted tears of the medial meniscus, arthritis in the left foot and peroneus brevis tendon, limited bilateral shoulder range, muscle spasms, shoulder impingement syndrome, internal derange of the left knee, spine pain, radiculopathy, and a bilateral foot drop. (R. at 577-78.) She also noted that Plaintiff appeared "well developed, well

nourished" and had full range of motion in her elbow, wrists, neck, and spine. (R. at 578.) Imaging of Plaintiff's right shoulder and knees revealed no fraction, dislocation, or effusion and a normal range of motion. (R. at 581.)

   D. **Plaintiff's Adult Function Report**

Plaintiff self-reported her capabilities in an Adult Function Report dated August 20, 2013. (R. at 269.) She noted that joint pain, nervousness, and gastroesophageal reflux disease impacted her sleep. (R. at 270.) Plaintiff noted that her spouse does the majority of the housework, lays out her clothes in the morning, and helps her bathe and remember her medications. (R. at 269–71.) Plaintiff reported arthritis pain, swelling, degenerative disc disease, and other conditions which limited her daily living. (R. at 276.) She also reported feeling disinterested in daily activities, depression, and feelings of isolation. (R. at 273.) Plaintiff noted problems with memory and concentration, particularly due to her chemotherapy medications. (R. at 271, 273.) She stated that she is unable to stand for long periods of time, is able to walk for only one block, and experiences fatigue and nausea when performing tasks. (R. at 271, 274.)

Plaintiff completed another Adult Function Report on January 30, 2014, in which she noted limited range of motion in her left arm, difficulty grasping with her right hand, and shortness of breath. (R. at 289, 291, 292.) Plaintiff again reported disinterest, difficulty concentrating, depression, and feeling of isolation. (R. at 293–95.) She also reported continued fatigue; arthritis pain in her legs, feet, arms, and hands; inability to perform housework; and inability to stand for long periods of time. (R. at 289–91.)

   E. **The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process for determining disability claims and found that Plaintiff was not disabled on August 1, 2016. *See* 20 C.F.R. § 404.1520(a)(4). First, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of April 12, 2013. (R. at 19.) Second, the ALJ determined that Plaintiff had several severe impairments. (R. at 19.) These included: obesity, history of breast cancer, lymphedema, left shoulder impingement syndrome, mixed connective tissue disease, peripheral neuropathy, mild degenerative joint disease of the right knee, and mild degenerative disc disease of the cervical spine. (*Id.*) The ALJ noted that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app'x 1. (R. at 21.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but that she was limited in duration and ability to lift, carry, sit, stand, walk, climb, stoop, kneel, crouch, crawl, and reach. (R. at 21.) The ALJ turned to the next step and relied on the testimony of the vocational expert ("VE"), who concluded that Plaintiff could perform her past relevant work as a benefits clerk. (R. at 23.) Therefore, the ALJ found that Plaintiff was not disabled under the Act at any time during the relevant period. (R. at 24.)

## II. STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000).

Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

### III. DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ used the established five-step evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520. For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence.

*Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that he was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that he has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. *Id.* § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that he cannot perform her past work, and the ALJ must assess the claimant's residual functional capacity ("RFC"). *Id.* § 404.1520(a)(4)(iv), (e). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant is capable of performing based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520 (a)(4)(v). If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

Plaintiff makes two sets of arguments. First, Plaintiff argues that the ALJ failed to include non-exertional limitations in her residual functional capacity ("RFC") determination. Second, Plaintiff argues that the ALJ failed to properly weigh the medical opinions of Plaintiff's treating physicians, Dr. Robert Silverbrook and Dr. Pauline Lerma.

**A. Whether the ALJ properly considered non-exertional limitations**

Plaintiff argues that the ALJ erred by failing to include Plaintiff's alleged non-exertional limitations in her RFC determination. (Doc. No. 11 ("Pl.'s Br.") at 13.) Specifically, Plaintiff submits that the ALJ failed to properly assess and provide explanations for discounting her alleged non-exertional limitations including: (1) her subjective pain and side effects of

medication limit her ability to concentrate, focus, or maintain pace; (2) her need to elevate her legs and ice her joints; and (3) her hand and wrist pain. (*Id.*)

An ALJ has a duty to consider all medical evidence placed before her and must provide an adequate reason for dismissing or discarding evidence. *Wier ex rel. Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. SSR 96-8p. Thus, the question is not whether the portion of the opinion determining the RFC mentions every alleged impairment, but rather, whether the decision, when "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching [her] conclusion." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

**1. Plaintiff's subjective pain and side effects of medication alleged to limit her cognitive abilities**

First, the ALJ did not err in failing to consider Plaintiff's alleged cognitive deficits from pain and medication. While subjective pain need not be fully confirmed by objective evidence, *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985), the ALJ cannot consider medical evidence that has not been placed before her. Subjective symptoms must be corroborated by objective medical evidence in order to be deemed a "medically determinable impairment," at which point the ALJ will analyze the "intensity and persistence" of the alleged symptoms through available evidence of treatment; daily activities; dosage, effectiveness, and side effects of medications; among others. *See* 20 C.F.R. § 404.1529(a), (c). To do so, as the Commissioner points out, the ALJ is tasked with "determin[ing] the extent to which a claimant is accurately

stating the degree of pain or the extent to which he or she is disabled by it." *Hartranft v. Apfel*, 181 F.3d 358, 362 (1999).

The ALJ did exactly as required. During the hearing, the ALJ carefully considered Plaintiff's testimony that she: does not do much because of her constant pain, can lift a quart of milk, does light housework and meal preparation, spends time with her grandchildren various times per week, and takes a variety of medication. (R. at 22.) The ALJ then carefully considered the lengthy medical record evidence that contradicts Plaintiff's asserted intensity of pain. (R. at 22–23.)

Plaintiff attempts to marginalize the ALJ's efforts by suggesting, without any legal reference, that the ALJ had a duty to consider potential side effects of Plaintiff's medications. Specifically, Plaintiff argues that the ALJ should have considered the "significant side effects [of] blurred vision, chest pain, dizziness, headaches, nervousness, shortness of breath, and edema in the legs and feet" from her hormone blocker, Anastrozole. (Pl.'s Br. at 14.) But the Plaintiff never raised these arguments before the ALJ. Further, the record does not indicate that these purported side effects stemmed from the medication. Instead, Plaintiff provides a citation in her brief to a website that lists these side effects and essentially asks the Court to view such newfound reference as evidence previously presented to the ALJ. The Court declines to do so, especially when the medical evidence on the record indicates Plaintiff's subjective complaints lack objective medical support.

Similarly unconvincing is Plaintiff's argument that the ALJ repeatedly asking Plaintiff to "focus" on questions during her hearing is evidence of cognitive deficits due to pain or medication when unsupported by any other findings. (*Id.* at 13 (citing AR 48).) Plaintiff argues that the ALJ ignored the limitations imposed by her agitation, a side effect of her anxiety

medication, when determining the Plaintiff's RFC. Plaintiff testified that the medication "made [her] feel agitated, so she had me cut the pill in half, but it's still, I don't like the feeling that it gets me." (R. at 46.) Plaintiff again fails to relate this side effect to any cognitive deficits or other potential limitations. The Court therefore finds that the ALJ did not err in failing to consider evidence Plaintiff failed to put before her.

As for Plaintiff's anxiety, the ALJ considered this alleged limitation in step three alongside facts that Plaintiff does not receive psychiatric treatment for said anxiety and that she has only been taking anxietymedication for a few months. (R. at 20.) In doing so, the ALJ determined that Plaintiff's anxiety is not a medically determinable impairment to be used in the RFC determination. SSR 96-8p. This Court therefore rejects Plaintiff's arguments because the ALJ considered Plaintiff's cognitive deficits, when required, in his RFC determination.

### 2. Plaintiff's need to elevate her legs and ice her joints

Second, the ALJ did not err in failing to consider Plaintiff's alleged limitation of needing to elevate her legs and ice her joints. Plaintiff argues that the ALJ did not consider that her clotting disorder requires her to elevate her legs and ice her joints. (Pl.'s Br. at 13.) Plaintiff only cites evidence that she experienced muscle and joint pain and weakness, which was properly considered by the ALJ (R. at 23), and her testimony that "when [she] sit[s] down . . . [she] ha[s] to put [her] leg up." (R. at 48.) Plaintiff argues that the ALJ failed to consider that these conditions are commonly relieved by icing and elevation and such necessary treatment constitutes a non-exertional limitation. (Doc. No. 13 ("Pl.'s Rep. Br.") at 2.) The record before the ALJ, however, contained no evidence to support Plaintiff's testimony that she needed to ice and elevate her leg, let alone that this treatment qualifies as a functional limitation. This Court finds that the ALJ did not err in failing to consider evidence that Plaintiff did not put before her.

### 3. Plaintiff's hand and wrist pain

Third, Plaintiff asserts that the ALJ erred in not considering stiffness and pain in Plaintiff's hands and wrists. (Pl.'s Br. at 13.) But the ALJ recognized during the hearing that Plaintiff alleged she suffered from "hand and wrist pain and swelling." (R. at 20.) The ALJ stated further that "the record does not indicate treatment" for same. (*Id.*) Therefore, the ALJ appropriately considered Plaintiff's assertion, but simply concluded that her alleged arm and wrist pain was not a medically determinable impairment because the record did not support that it should be considered one. The Court finds no error by the ALJ here.

### 4. Plaintiff's academic argument

Lastly, Plaintiff points out the "academic distinction" that the ALJ limited her to occasional overhead reaching with her non-dominant extremity despite her symptoms being credited to limitations in her dominant extremity. (Pl.'s Br. at 15.) The ALJ, however, pointed to a multitude of evidence to support the determination that Plaintiff's issue was with her non-dominant extremity. (Doc. No. 12 ("Def.'s Br.") at 15.) Based on Defendant's support in the record and Plaintiff's lack of support in her briefs, the Court rejects this argument.

### B. Whether the ALJ properly weighed treating physicians' medical opinions

Plaintiff next argues that the ALJ failed to properly weigh the medical opinions of Dr. Robert Silverbrook and Dr. Pauline Lerma.

An ALJ has a duty to consider all medical evidence placed before her and must provide an adequate reason for dismissing or discarding evidence. *Wier ex rel. Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984)). An ALJ must resolve conflicts in the evidence and cannot rely on a "single piece of evidence" that "will not satisfy the substantiality test." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). An ALJ "can reject a treating physician's opinion, and thus

obviously a consultative examiner's opinion as well, where the opinion is (1) not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or (2) inconsistent with other substantial evidence of record." *Ramos v. Colvin*, 14-cv-3971, 2016 WL 1270759, at *5 (D.N.J. Mar. 31, 2016) (citing *Kreuzberger v. Astrue*, 07-cv-529, 2008 WL 2370293, at *4 (W.D. Pa. June 9, 2008) (citing 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2))). Ultimately, "an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### 1. Dr. Silverbrook's medical opinion

The ALJ properly weighed Dr. Silverbrook's medical opinion. If the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains her reasons and makes a clear record. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."). Dr. Silverbrook opined that Plaintiff can only stand and/or walk for fifteen minutes per day; can only sit fifteen minutes per day; can only lift one pound; can never stoop, crouch, kneel, or crawl; and cannot have any exposure to hazards or irritants. (R. at 826–27.) The ALJ found this opinion to be inconsistent with Plaintiff's own testimony, examinations by and treatments notes of physicians including Dr. Silverbrook, and treatments or lack thereof. (R. at 23.) The ALJ specifically cited Plaintiff's testimony that she can stand and/or walk for 1.5 hours per day in fifteen minutes increments, can sit 1.5 hours per day, and can lift a quart of milk. (R. at 22.) The ALJ also cited Dr. Rubbani observations and Drs. Rubbani and Silverbrook's assessments of Plaintiff's mobility, coordination, and limitations, such as no muscle weakness in her bilateral

biceps, triceps, hip flexors, or knee extensors. (R. at 22–23.) The ALJ therefore relied upon sufficient evidence and explained his reasoning for giving Dr. Silverbrook's opinion little weight.

### 2. Dr. Lerma's medical opinion

The ALJ also properly gave little weight to Dr. Lerma's medical opinion. Dr. Pauline Lerma stated in a May 25, 2016 letter that Plaintiff is "no longer able to perform her past job or any other job" and is "permanently and totally disabled." (R. at 744.) First, the ALJ is not required to give significance to the opinions of treating physicians insofar as they are conclusory opinions that someone is "disabled" or "unable to work." *Dixon v. Comm'r of Soc. Sec.*, 183 F. App'x 248, 251 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(3)). However, the ALJ still evaluated both Dr. Lerma's opinion alongside Dr. Silverbrook's opinion as explained above. Like Dr. Silverbrook's opinion, the ALJ found Dr. Lerma's opinion to be inconsistent with Plaintiff's own testimony, examinations by and treatments notes of physicians, and treatments or lack thereof. (R. at 23.) Despite not being required to do so, the ALJ relied upon sufficient evidence and explained his reasoning for giving Dr. Lerma's opinion little weight. The Court accordingly upholds the ALJ's decision to give little weight to the medical opinions as there was substantial contradictory medical evidence in the record and the ALJ provided sufficient explanation of her conclusion.

## III. CONCLUSION

For the reasons discussed above, the Court will **AFFIRM** the Commissioner's decision.

Dated:  4/26/2019                                                            s/ Robert B. Kugler
                                                                                                    ROBERT B. KUGLER
                                                                            United States District Judge